UTILITY CONSTRUCTION CO., PLAINTIFF-RESPONDENT, v. BOROUGH OF SOUTH RIVER, NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 1, 1946—Decided May 7, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the appellant, *Stanley S. Dickerson* (*George S. Burton,* of counsel).

For the respondent, *Edmund A. Hayes* and *John T. Keefe.*

The opinion of the court was delivered by

COLIE, J. The Borough of South River appeals from a judgment in the sum of $2,568.72 in favor of Utility Construction Company entered in the Middlesex County Court of Common Pleas.

Utility Construction Company is in the road-building business and bid on certain work which the Borough of South River had advertised for bids. The contract was awarded to Utility and upon completion of the work there was paid by the borough all but $5,615.43 that Utility alleged to be due. Prior to the entry of judgment, a further payment was made, reducing the sum in controversy to the amount for which judgment was entered.

The appellant sums up its various grounds of appeal into two propositions as follows: (1) the court below erroneously refused to grant defendant's motions to nonsuit the plaintiff or to direct a verdict in favor of the defendant; and improperly allowed the jury to determine whether, in supplying the excess tonnage, the plaintiff had substantially complied with or performed the contract so as to entitle it to additional compensation. (2) The court below erroneously allowed the jury to determine whether the deviation from the contract and specifications was permissible, or authorized by or waived by the defendant. The contract between Utility and the borough provided that Utility was to perform the work "in accordance with the said specifications" which were annexed to and made a part of the contract.

Turning to the specifications, we find that they provide under the heading "Scope of Work" as follows:

"The work contemplated by these specifications shall consist of grading and preparing the surface of the following streets by scarifying, scraping, and rolling, so that the finished pavement shall have a 4″ crown on all streets under 30 feet in width from curb to curb, and a 6″ crown on all streets 30 feet or over in width from curb to curb. Grades, lines, and other engineering work necessary for the preparation of these streets will be furnished by the proper Borough authorities to the Contractor. After the sub-grade for pavement is prepared and compacted, a prime coat of R. T.-2 shall be applied, averaging one-half gallon per square yard. Following this application, a top surface of 1¼″ bituminous concrete Type T shall be furnished, delivered, and applied in accordance with standard State Highway specifications. All streets shall be surfaced from curb to curb and in the

case of streets or sections of streets where curbs have not been constructed, the Contractor shall furnish and install temporary 2″ plank curbing which shall be placed at the proper curb grade, as designated by the Engineer. This temporary curbing may be moved from street to street as needed."

The specifications also provided for estimated quantities of labor and material as follows:

"41,500 sq. yds. of road surface to be scarified, fine-graded, and rolled, ready for surfacing.

"21,000 gallons prime coat R. T.-2, furnished, delivered, and applied.

"2,600 tons Type T bituminous concrete, furnished, delivered and applied."

The controversy arose out of the fact that Utility used 2,837.21 tons of Type T bituminous concrete and the borough contends that under the terms of the contract, it should only have used 2,600 tons of Type T bituminous concrete. There was evidence introduced on behalf of Utility that the reason why 237.21 tons of bituminous concrete were used in excess of the 2,600 tons was because the sub-base was of such a character that depressions developed and instead of filling up these depressions with the sub-base material, the contractor leveled the depressions by filling them with bituminous concrete.

Referring to the specifications heretofore quoted, it will be noted that "a top surface of 1¼″ bituminous concrete Type T shall be furnished, delivered, and applied." Actual borings made in the roadway indicated that the layer of bituminous concrete varied from 1¼ inches to 2½ inches in depth. The contract which the Utility agreed to perform specifically provided for an application of bituminous concrete to a depth of 1¼ inches. The Utility seeks to explain the laying of the bituminous concrete in excess of the 1¼ inch depth provided for by saying that it was necessary so to do because the sub-grade was "yielding." The fact that the top surface was to be applied to a depth of 1¼ inches placed upon Utility the burden of laying the sub-grade and the prime coat so that a top surface of 1¼ inches only was required. and not a top surface of some other depth. It is significant

that while the quantities of material were stated in the specifications as estimates, the thickness of the top coat was definitely fixed. The evidence was uncontradicted that the excess tonnage was due to applying a top coat thicker than called for by the specifications. With respect to the depth of the top coat, the contract is clear and unambiguous and the construction of the contract was therefore a question of law to be decided by the trial judge and not by the jury. *Rics* v. *Automobile Insurance Co.*, 121 *N. J. L.* 493. In leaving this question to the jury, the court erred.

The judgment under appeal is reversed, with costs.